1  Michael F. Ram (SBN 104805)
   mfr@lrolaw.com
2  Karl Olson (SBN 104760)
   ko@lrolaw.com
3  LEVY, RAM & OLSON
   639 Front Street, Fourth Floor
4  San Francisco, California 94111
   Telephone: (415) 433-4949
5  Facsimile: (415) 433-7311

6  Charles E. Merrill (SBN 87861)
   Jeffrey B. Cereghino (SBN 099480)
7  Matt J. Malone (SBN 221545)
   MERRILL, NOMURA & MOLINEUX LLP
8  350 Rose Street
   Danville, CA 94526
9  Telephone: 925-833-1000
   Facsimile: 925-833-1001

10
11 Attorneys for Plaintiff and the Proposed Class

   *Additional Counsel Appear on Signature Page*
12

13

14               UNITED STATES DISTRICT COURT

15             CENTRAL DISTRICT OF CALIFORNIA

16 LARRY WARD, on behalf of himself and      CASE NO. CV 08-6370-VBF(Ex)
   all others similarly situated,
17                                            Class Action
                      Plaintiff,
18                                            PLAINTIFF'S MEMORANDUM OF
         v.                                   POINTS AND AUTHORITIES IN
19                                            OPPOSITION TO IPEX INC. AND IPEX
   IPEX, INC., a foreign corporation of       USA LLC'S MOTION TO DISMISS
20 Canada; IPEX USA, LLC, a Delaware          PLAINTIFF'S FIRST AMENDED
   corporation; IPEX COMPANY, a Colorado      COMPLAINT PURSUANT TO FED. R.
21 corporation; and DOES 1 through 10,        CIV. P. 12(b), OR IN THE
   inclusive,                                 ALTERNATIVE, TO STRIKE THE
22                                            COMPLAINT PURSUANT TO FED. R.
                      Defendants.             CIV. P. 12(f)
23                                            _____
24
25                                            Date:      February 9, 2009
                                              Time:      1:30 pm
26                                            Courtroom: 9
27
28

Case No. CV 08-6370-VBF(Ex) – PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO IPEX INC. AND IPEX USA LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT

1

**TABLE OF CONTENTS**

2

I.      INTRODUCTION. ........................................................................................... 1

II.     APPLICABLE LEGAL STANDARDS. ........................................................ 2

III.    PLAINTIFF HAS ALLEGED CONSUMER FRAUD BY MATERIAL
        OMISSION CLAIMS UNDER THE CALIFORNIA CONSUMERS LEGAL
        REMEDIES ACT AND THE CALIFORNIA UNFAIR COMPETITION LAW. ............. 2

        A.      Plaintiff Alleges That Ipex Had Knowledge Of Material Facts Not Known
                To Plaintiff At The Time Ipex Sold the Kitec Pipe and Failed to Disclose
                Them. ........................................................................................................ 2

        B.      In a CLRA/UCL Action Based On Omissions, Causation Can Be Proven
                By Showing That The Omitted Information Is Material to a Reasonable
                Consumer. ................................................................................................. 3

IV.     PLAINTIFF HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF
        IMPLIED WARRANTY ................................................................................ 7

V.      PLAINTIFF SUFFICIENTLY PLEADS FRAUD, ESPECIALLY SINCE RULE
        9(B)'S SPECIFICITY REQUIREMENT IS LESS STRINGENTLY APPLIED IN
        A CLAIM OF FRAUD BY OMISSION OVER A PERIOD OF TIME. ........................... 8

VI.     PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR INJUNCTIVE
        RELIEF. ...................................................................................................... 10

VII.    PLAINTIFF HAS PROPERLY ALLEGED ENTITLEMENT TO RESTITUTION
        FROM IPEX UNDER THE UCL. ................................................................. 14

VIII.   THE MOTION TO STRIKE SHOULD BE DENIED. ................................. 15

IX.     CONCLUSION. ........................................................................................... 16

1

# TABLE OF AUTHORITIES

2

3

**Cases**

4
*Atkinson v. Elk Corporation of Texas*
    142 Cal. App. 4th 212 (2007)..................................................................................1, 7

5
*Bell Atlantic Corp. v. Twombly*
6
    127 S.Ct. 1955 (2007) ..........................................................................................2

7
*Blackie v. Barrack*
    524 F.2d 891 (9th Cir. 1975)................................................................................4

8
*Cahill v. Liberty Mut. Ins. Co.*
9
    80 F.3d 336 (9th Cir. 1996)..................................................................................2

10
*Caro v. Proctor & Gamble Co.*
    18 Cal. App. 4th 644 (1993).................................................................................5

11
*Cel-Tech Comm'ns, Inc. v. Los Angeles Cellular Telephone Co.*
12
    20 Cal.4th 163 (1999)...........................................................................................13

13
*Chamberlan v. Ford Motor Co.*
    369 F. Supp. 2d 1138 (N.D. Cal. 2005)...........................................................3, 6

14
*Consumer Advocates v. Echostar Satellite Corp.*
15
    113 Cal. App. 4th 1351 (2003) ............................................................................3

16
*Consumers Union of U.S., Inc. v. Alta-Dena Cert. Dairy*
    4 Cal. App. 4th 963 (1992)..................................................................................11

17
*Corbett v. Superior Court*
18
    101 Cal. App. 4th 649 (2002)..............................................................................14

19
*Cruz v. United States*
    219 F. Supp. 2d 1027 (N.D. Cal. 2002)..............................................................13

20
*David K. Lindemuth Co. v. Shannon Financial Corp.*
21
    637 F.Supp. 991 (N.D. Cal. 1986)......................................................................9

22
*Dukes v. Wal-Mart*
    509 F.3d 1168 (9th Cir. 2007).............................................................................11

23
*Falk v. General Motors Corp*
24
    496 F. Supp. 2d 1088 (N.D. Cal. 2007)..............................................................9

25
*Fletcher v. Security Pacific Nat'l Bank*
    23 Cal.3d 442 (1979)...........................................................................................12

26
*Friedman v. 24 Hour Fitness*
27
    580 F. Supp. 2d 985 (N.D. Cal. 2008)................................................................12

28
*Johnson v. GMRI, Inc*
    2007 U.S. Dist. LEXIS 66058 (E.D. Ca. 2007) .................................................13

*Kasky v. Nike, Inc.*
  27 Cal. 4th 939 (2002)..................................................................................13

*Lewis v. Hermann*
  775 F. Supp. 1137 (N.D. Ill. 1991)..................................................................8

*Massachusetts Mutual Life Insurance Company v. Superior Court*
  97 Cal. App. 4th 1282 (2002)..........................................................................2

*Mazza v. American Honda Motor Co.*
  2008 U.S. Dist. LEXIS 102429 (C.D. Cal. 2008) ..........................................5

*Outboard Marine Corp. v. Superior Court*
  52 Cal. App. 3d 30 (1975)................................................................................2

*Pareto v. F.D.I.C.*
  139 F.3d 696 (9th Cir. 1998)............................................................................2

*Parks Sch. of Bus., Inc. v. Symington*
  51 F.3d 1480 (9th Cir. 1995)............................................................................2

*People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*
  104 Cal.App.4th 508 (2002)..........................................................................12

*RDF Media Ltd. v. Fox Broadcasting Co.*
  372 F. Supp. 2d 556 (C.D. Cal. 2005)............................................................15

*Rhoades v. Powell*
  644 F. Supp. 645 (E.D. Cal. 1986)...................................................................9

*Shapiro v. Sutherland*
  64 Cal. App. 4th 1534 (1998)...........................................................................3

*Shersher v. Super. Ct.*
  154 Cal. App. 4th 1491 (2007).......................................................................15

*Sprewell v. Golden State Warriors*
  266 F.3d 979 (9th Cir. 2001)............................................................................2

*Stanbury Law Firm v. I. R. S.*
  221 F. 3d 1059 (8th Cir. 2000)......................................................................15

*State Farm Fire & Casualty Co. v. Super. Ct.*
  45 Cal. App. 4th 1093 (1996).........................................................................13

*Stickrath v. Globalstar, Inc.*
  527 F. Supp. 2d 992 (N. D. Cal. 2007).............................................................8

*Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*
  190 F. Supp. 2d 785 (D. Md. 2002) .................................................................8

*Trew v. Volvo Cars of N. Am.*
  2006 U.S. Dist. LEXIS 4890 (E.D. Cal. 2006) ........................................14, 15

*U.S. v. LSL Biotechnologies*
  379 F.3d 672 (9th Cir. 2004)............................................................................2

1  *United States v. Hempfling*
      431 F. Supp. 2d 1069 (E.D. Cal. 2006) ...................................................................8, 9
2
   *Virginia Pharmacy Board v. Virginia Consumer Counsel*
3     425 U.S. 748 (1976) ...................................................................................................13

4  Washington v. Baenziger
       673 F.Supp. 1478 (N.D. Cal. 1987)...........................................................................9
5
   *Westside Sane/Freeze v. Ernest W. Hahn, Inc.*
6     224 Cal. App. 3d 546 (1990) .....................................................................................13

7  *Wilens v. T.D. Waterhouse Group, Inc.*
      120 Cal. App. 4th 746 (2003).....................................................................................6
8
   *Williams v. Gerber Prods. Co.*
9     523 F.3d 934 (9th Cir. 2008) .....................................................................................2

10 **Statutes**

11 Business & Professions Code § 17200.......................................................................1, 10

12 Civil Code § 1750.............................................................................................................1

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION.

Plaintiff alleges claims under the California Consumers Legal Remedies Act, Civil Code § 1750 et seq. ("CLRA"), and the California Unfair Competition Law, Business & Professions Code § 17200 et seq. ("UCL"), based on Ipex's[1] failure to disclose material defects with its Kitec pipes and fittings.  Plaintiff also alleges a claim for breach of implied warranty.  Ipex moves to dismiss, claiming that Plaintiff has failed properly to allege: (1) a CLRA or UCL consumer fraud claim; (2) consumer fraud with sufficiently particularity; (3) an implied warranty claim; (4) injunctive relief; and (5) restitution and disgorgement.  As with its Kitec pipe systems, each of Ipex's arguments fails to hold water.

First, Plaintiff has properly stated CLRA and UCL omission claims, as to which causation can be pleaded, as here, by an allegation that the omission was material to a reasonable consumer.

Second, under *Atkinson v. Elk Corporation of Texas*, 142 Cal. App. 4th 212, 229 (2007), even though Ipex sells its Kitec pipe through distributors, Plaintiff has properly alleged a claim for breach of implied warranty since Ipex created privity with consumers such as Plaintiff when it provided them an express warranty.

Third, Plaintiff has alleged fraud by omission with sufficient particularity according to the standard that applies to consumer fraud claims based on failure to disclose.  The affirmative statements mentioned in the Complaint are there to show that Ipex had a duty to disclose.  The essence of the case is an omission.  Indeed, Ipex does not deny the central fact that gives rise to this action:  that it never disclosed to anyone that its pipes and fittings will prematurely corrode and fail when exposed to water. (See First Amended Complaint ["Complaint"], ¶18)  When did Ipex not disclose this?  Always.  Where did it not disclose this?  Everywhere.  To whom did it not disclose this?  Everyone.

Fourth, Plaintiffs allege ongoing violations of the CLRA and UCL, and therefore, they have properly alleged a request for injunctive relief.

---

[1] Plaintiff will refer to the Ipex Defendants collectively as "Ipex."

1    Finally, under recent UCL cases involving manufacturers who sell consumer products

2    through distributors, Plaintiff has properly alleged restitution and disgorgement since Ipex

3    received money, albeit indirectly, as a result of the sale of Kitec pipe to Plaintiff.

4    For all the above reasons, the Court should deny the motion to dismiss and the motion to

5    strike.

6    **II.    APPLICABLE LEGAL STANDARDS.**

7    A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.

8    The Court should deny a motion to dismiss when a claim is adequately supported by any set of

9    facts showing that the plaintiff may be entitled to relief. (*Bell Atlantic Corp. v. Twombly*, 127

10   S.Ct. 1955, 1965 (2007); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).)

11   In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true

12   all material allegations in the complaint, as well as all reasonable inferences to be drawn from

13   them. (*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998); *Cahill*, 80 F.3d at 338.) The Court

14   must read the Complaint in the light most favorable to the plaintiff. (*Sprewell v. Golden State*

15   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480,

16   1484 (9th Cir. 1995).) The Court cannot grant the motion to dismiss unless it appears beyond

17   doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him

18   to relief. *U.S. v. LSL Biotechnologies,* 379 F.3d 672, 698 (9th Cir. 2004).

19   Only in "a rare situation" is it appropriate to grant a motion to dismiss a UCL claim.

20   *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008).

21   **III.    PLAINTIFF HAS ALLEGED CONSUMER FRAUD BY MATERIAL OMISSION**
22   **CLAIMS UNDER THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
     **AND THE CALIFORNIA UNFAIR COMPETITION LAW.**

23   **A.    Plaintiff Alleges That Ipex Had Knowledge Of Material Facts Not Known To**
     **Plaintiff At The Time Ipex Sold the Kitec Pipe and Failed to Disclose Them.**
24

25   Actions under the CLRA and UCL may be premised on omissions of material

26   information. (*Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 37 (1975) [CLRA],

27   *Massachusetts Mutual Life Insurance Company v. Superior Court,* 97 Cal. App. 4th 1282, 1286

28   (2002) [UCL and CLRA], and *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138, 1144 (N.D.

---

1  Cal. 2005) [CLRA].

2      A seller has a duty to disclose material facts not known to a buyer.  *Shapiro v. Sutherland*,

3  64 Cal. App. 4th 1534, 1544 (1998).  This fundamental principle of California law applies with

4  equal force to manufacturers of mass consumer products who peddle their defective wares

5  through distributors.  For example, in denying a motion to dismiss in *Falk v. General Motors*

6  *Corporation*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007), the district court stated:

7          Plaintiffs allege that GM had exclusive knowledge of the putative defect in their
           speedometers. Plaintiffs claim that "[o]nly GM had access to the aggregate data
8          from its dealers[,] only GM had access to pre-release testing data[, and] only GM
           had access to the numerous complaints from its customers." When accepted as
9          true for the purposes of this Rule 12(b)(6) motion, plaintiffs' material allegations
           suffice to state a claim that GM had exclusive knowledge of the alleged defect in
10         their speedometers. The record of complaints to GM between 2003 and 2007
           show that GM was clearly aware of a problem with its speedometers; the record
11         makes it equally clear that customers only became aware of the problem if they
           actually experienced it first-hand. Since, as plaintiffs argue, GM "was in a
12         superior position to know" that its speedometers might fail, plaintiffs successfully
           state a CLRA claim for omission of a material fact which lay within GM's
13         exclusive knowledge.

14  496 F. Supp. 2d at 1096-97.  Similarly, in *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138,

15  1145 (N.D. Cal. 2005), the court denied summary judgment of CLRA claims where the defendant

16  had knowledge of the increased failure rate of its intake manifolds and failed to disclose it to

17  consumers.

18      Materiality, for CLRA claims and therefore UCL claims, is judged by the effect on an

19  objective "reasonable consumer." *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.

20  App. 4th 1351, 1360 (2003).  Plaintiff has alleged that here.  (Complaint ¶¶ 15,17, 18, 19, 32 &

21  40.)

22      **B.    In a CLRA/UCL Action Based On Omissions, Causation Can Be Proven By
23             Showing That The Omitted Information Is Material to a Reasonable
               Consumer.**

24      Ipex argues that Plaintiff has insufficiently alleged causation and claims to find support

25  for its argument in *Mass Mutual,* 97 Cal.App.4th 1282.  To the contrary, the *Mass Mutual* court

26  expressly rejected Ipex's argument that a plaintiff in a CLRA omission action must be able to

27  show reliance on particular affirmative representations made by the defendant.

28

1    *Mass Mutual* involved a "vanishing premium" life insurance policy, known as an "N-pay

2    policy," that paid high dividends that, over time, would become large enough to pay the annual

3    premium.  Plaintiffs alleged that the insurer failed to disclose in selling N-pay policies that the

4    dividend was fixed entirely at the discretion of the insurer, which knew that it could not continue

5    to pay such high amounts.  The insurer argued that the plaintiffs' claims required individualized

6    proof of specific representations that each of the 33,000 class members received and relied on.

7    The court of appeal rejected the argument.  "In order to establish liability for a *nondisclosure*

8    under either the UCL or the CLRA, plaintiffs *need not present individual proof that each class*

9    *member relied on particular representations* made by Mass Mutual or its agents."  (*Id.* at 1286,

10    emphasis added.)  The court of appeal explained:

11    Causation as to each class member is commonly proved more likely than not by
       materiality. That showing will undoubtedly be conclusive as to most of the class.

12    The fact a defendant may be able to defeat the showing of causation as to a few
       individual class members does not transform the common question into a

13    multitude of individual ones; plaintiffs satisfy their burden of showing causation
       as to each by showing materiality as to all.

14

15    (*Id.*, at 1292 [quoting *Blackie v. Barrack*, 524 F.2d 891, 907, fn. 22 (9th Cir. 1975).].)

16    Under *Mass* Mutual, then, causation in a CLRA class action based on omissions is alleged

17    by pleading materiality of the omitted information.  That is exactly what Plaintiff alleges here.

18    Specifically, Plaintiff alleges:

19    17. . . . Defendants omitted to disclose material facts regarding the product's
       performance and longevity.

20

21    18.  The composition of the Product virtually guarantees that it will corrode when
       exposed to water, in a process known as "dezincification," (wherein zinc is
       removed from the alloy, leaving a porous copper-rich structure with little

22    mechanical strength) well in advance of the warranted 30-year useful life. . . .

23    (Complaint ¶¶ 17, 18.)

24    Plaintiff has also expressly alleged that this material omission caused his damages:

25    19.  As a result of Defendants' misconduct, Plaintiff and the Class have suffered
       actual damages in that the piping systems in their homes and other structures have

26    prematurely failed and will continue to do so, causing continuous and progressive
       damage to their property, and requiring them to expend thousands of dollars to

27    repair or replace the pipes prior to the expiration of the "useful life" of the
       Product as represented by Defendants. . . .

28

1

. . .

2      32.  Defendants' deceptive practices were specifically designed to induce Plaintiff
3  and members of the class to purchase the Product.  Defendants engaged in
marketing efforts as detailed in the general allegations, to reach Class Members,
their agents, and/or third parties upon whom they relied and persuade them to
4  purchase and install the Product manufactured by Defendants, or to purchase
homes and other structures in which the defective Product manufactured by
5  Defendants had been installed.

6

. . .

7      40.  As a direct and proximate cause of Defendants' unfair methods of
competition and unfair or deceptive acts or practices, Plaintiff and the class have
8  suffered actual damages in that they own homes and other structures on which
defective Product is or was installed.  The Product will prematurely fail due to
9  corrosion and dezincification which will require (or has already required) Plaintiff
and the Class to incur costs to prematurely repair and/or replace their plumbing
10  systems.

11  (Complaint ¶¶ 19, 32, 40.)  Under *Mass. Mutual*, this is more than sufficient.

12      Nor can Ipex find support in *Caro v. Proctor & Gamble Co*., 18 Cal. App. 4th 644 (1993).

13  *Caro* held that a plaintiff could not bring a CLRA claim based on his belief that defendant's

14  orange juice was fresh when the container itself plainly disclosed that the orange juice was "from

15  concentrate."  (*Id*. at 665, 668-69.)  Subsequently, in *Mass Mutual*, the same court that decided

16  *Caro*, Division 1 of the Fourth Appellate District, distinguished *Caro* on grounds that apply

17  directly to the present case.  In *Mass Mutual*, the court explained, that unlike in *Caro*,

18  "There is no evidence any significant part of the class had access to all the information plaintiffs

19  believe they needed before purchasing N-pay premium payment plans. Indeed, there is nothing in

20  the record which shows that Mass Mutual's own assessment of the discretionary dividends was

21  disclosed to any class member."  (*Mass Mutual,* 97 Cal. App. 4th at 1295.)

22      Exactly the same is true here.  Unlike in *Caro*, but as in *Mass Mutual*, there is no

23  evidence that Ipex disclosed to anyone that its Kitec pipes and fittings would corrode as a result

24  of their exposure to water and fail long before the end of their expected life.[2]

25

---

26     [2]  This Court recently distinguished *Mass Mutual* and *Caro* on the same basis in the
context of a motion for class certification:  "The Court finds the facts of this case to be closer to
27  those of *Massachusetts Mutual*, where the omitted information *may* have been available to some
consumers, pre-purchase but there was no evidence consumers received it, than it does to the
28  facts of *Caro*, where the information was available on the juice carton."  *Mazza v. American
Honda Motor Co.,* 2008 U.S. Dist. LEXIS 102429, *41 (C.D. Cal. 2008).

1    Nor is there anything to the contrary in *Wilens v. T.D. Waterhouse Group, Inc.,* 120 Cal.

2    App. 4th 746 (2003).  There, plaintiff sued an internet stock trading service alleging that the

3    service's contracts were unconscionable in providing that the customer's accounts and trading

4    rights could be terminated without notice or reason.  The trial court denied class certification and

5    the court of appeal affirmed because individualized issues predominated in determining the fact

6    of damages for each class member.  (*Id.*, 120 Cal. App. 4th at 754-755.)  The contract's

7    termination provision did not, of itself, cause any customer to suffer damages.  (*Id.* at 756.)

8    Our case is much more like *Chamberlan v. Ford Motor Co.*, 369 F. Supp. 2d 1138 (N.D.

9    Cal. 2005).  There, the plaintiffs alleged that Ford knew that the manifolds it installed in certain

10    Ford vehicles contained a safety defect, and that Ford concealed that information from

11    prospective buyers.  Specifically, the plaintiffs in *Chamberlan* alleged that "no later than January

12    1, 1997, and possibly earlier, Defendant became aware that a large number of intake manifolds in

13    the subject automobiles were cracking prematurely, exposing drivers and their passengers to

14    serious risk of injury.  Plaintiffs allege that Defendant's testing and records showed that the

15    intake manifolds failed at a much higher rate than was to be expected from a properly functioning

16    manifold, and was occurring much more quickly than the expected life of the part."  (314 F.

17    Supp. 2d 953, 955 (N.D. Cal. 2004).)  This sufficed to state a CLRA cause of action.  (369 F.

18    Supp. 2d at 1146 (denying defendant's motion for summary adjudication of CLRA claims).)

19    Ipex cites *In re Stac Electronics Securities Litigation*, 89 F. 3d 1399 (9th Cir. 1996) for the

20    proposition that Rule 9(b) is designed to "prohibit plaintiff from unilaterally imposing upon the

21    court, the parties and society enormous social and economic costs absent some factual basis."

22    (Memo. at 2, 14.)  Nothing in that securities case, however, insulates the manufacturers of

23    defective products from being held accountable for material omissions such as those alleged here.

24    Indeed, the Ninth Circuit recognized in *Stac Electronics* that, "The 'materiality' of an omission is

25    a fact-specific determination that should ordinarily be assessed by a jury."  (89 F. 3d at 1405.)

26    Here, a jury should decide the materiality of Ipex's failure to disclose the "dezincification" of its

27    pipes and the other problems which led to premature corrosion. In the words of the court in *Stac*

28    *Electronics*, society has a strong interest in protecting consumers from "enormous social and

1    economic costs" foisted upon them when the manufacturers of defective products don't disclose

2    defects.[3]

3    **IV.    PLAINTIFF HAS PROPERLY ALLEGED A CLAIM FOR BREACH OF
         IMPLIED WARRANTY.**

4

5          A recent California state court decision, unlike the older cases cited by Ipex, holds that a

6    consumer with an express warranty from a manufacturer can assert a claim for breach of implied

7    warranty even though he did not purchase directly from the manufacturer.

8          The case is *Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212, 229 (2007). *Atkinson*

9    held that where, as here, a manufacturer provides an express warrant to a consumer, the

10   manufacturer has thereby created privity and the consumer can sue for breach of implied

11   warranty: "Elk brought itself into privity of contract with the ultimate consumer, Atkinson, by

12   extending this express warranty." *Id.*

13         In *Atkinson*, the plaintiff did not buy his shingles directly from the manufacturer; he

14   bought them from a roofing contractor. While there was no purchase and sale contract between

15   the consumer and the manufacturer, the manufacturer did provide an express, written, 30-year

16   warranty on the shingles, just as Ipex provided a 30-year warranty on its defective Kitec pipes.

17   *Id.* By providing that warranty, the court held, the manufacturer, "brought itself into privity of

18   contract with the ultimate consumer . . . ." (*Id.*.) The plaintiff, therefore, was in privity with the

19   manufacturer and could sue for breach of implied warranty. (*Id.*)

20         Thus, under California law, when a manufacturer has provided an express warranty that

21   runs to the ultimate consumer, a direct purchase contract between the consumer and the

22   manufacturer is not necessary to establish privity and support the consumer's claim for breach of

23   implied warranty. Here, as in *Atkinson*, Defendants expressly warranted Kitec pipe and fittings

24   to consumers. Plaintiff alleges that "Defendants expressly warranted and advertised that the

25   Product would be free of damage resulting from defects in material and workmanship for at least

26   30 years." (Complaint ¶ 16; see also ¶ 18 ("warranted 30-year useful life").) This suffices to

27   _____

28         [3]  It can hardly be said that this action lacks a "factual basis" when defendants paid $90
     million to settle claims involving the same product in Clark County, Nevada.

1    defeat Ipex's privity argument.  Therefore, Plaintiff has stated a claim for breach of implied

2    warranty.

3         Defendants' reliance upon *Stickrath v. Globalstar, Inc.*, 527 F. Supp. 2d 992, 996 (N. D.

4    Cal. 2007) is misplaced.  In *Globalstar*, the court granted a motion to dismiss for lack of standing

5    with leave to amend, but it distinguished a number of cases (*Id*. at 996 fn. 2) in which courts had

6    denied motions to dismiss complaints based upon material omissions.  Here, the complaint

7    (paragraph 14) sets forth a number of representations that create a duty to disclose, such as

8    "doesn't . . . corrode" -- and then specifically alleges that if defendants <u>had</u> disclosed that Kitec

9    pipes prematurely corrode, "those facts would have been material to the consumer." (Paragraph

10   15.)  Thus, plaintiffs have adequately pled material omissions within the holdings of the many

11   cases cited in footnote 2 of the *Stickrath v. Globalstar* decision.

12   **V.    PLAINTIFF SUFFICIENTLY PLEADS FRAUD, ESPECIALLY SINCE RULE
             9(B)'S SPECIFICITY REQUIREMENT IS LESS STRINGENTLY APPLIED IN A**
13   **       CLAIM OF FRAUD BY OMISSION OVER A PERIOD OF TIME.**

14         Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud . . . the

15   circumstances constituting fraud . . . shall be stated with particularity."  (Fed. R. Civ. P. 9(b).)

16   Generally, a fraud claim satisfies the specificity requirement of Rule 9(b) "if it alleges the time,

17   place, and content of the fraudulent statements, including reasons why the statements are false."

18   (*United States v. Hempfling*, 431 F. Supp. 2d 1069, 1078 (E.D. Cal. 2006).)  Rule 9(b)'s general

19   requirements are less stringent when the plaintiff alleges fraud by omission and the fraud

20   occurred over a period of time.

21         First, where a fraud claim is based on a defendant's alleged omissions, courts have

22   recognized that, "[l]ike Sherlock Holmes' dog that did not bark in the night, an actionable

23   omission obviously cannot be particularized as to 'the time, place and contents of the false

24   representations' or 'the identity of the person making the misrepresentation.'"  (*Bonfield v.

25   AAMCO Transmissions, Inc.*, 708 F. Supp. 867, 875 (N.D. Ill. 1989) (<u>superseded by statute on

26   other grounds in *Lewis v. Hermann*</u>, 775 F. Supp. 1137, 1153 (N.D. Ill. 1991)).  *See also Swedish

27   Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F. Supp. 2d 785, 799 (D. Md. 2002)

28   (denying motion to dismiss fraud claim; noting that "an omission cannot be described in terms

1  of the time, place, and contents of the misrepresentation or the identity of the person making the

2  misrepresentation').)

3      As the court confirmed in *Falk v. General Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99

4  (N.D. Cal. 2007), "[c]learly, a plaintiff in a fraud by omission suit will not be able to specify the

5  time, place, and specific content of an omission as precisely as would a plaintiff in a false

6  representation claim."  The Court also noted that:

7  . . . a fraud by omission claim can succeed without the same level
   of specificity required by a normal fraud claim. See, e.g.,
8  *Washington v. Baenziger,* 673 F.Supp. 1478, 1482 (N.D. Cal.
   1987) (Weigel, J.) ("Where the fraud consists of omissions on the
9  part of the defendants, the plaintiff may find alternative ways to
   plead the particular circumstances of the fraud. [F]or example, a
10 plaintiff cannot plead either the specific time of the omission or the
   place, as he is not alleging an act, but a failure to act.") (internal
11 citations and quotations omitted); see also *David K. Lindemuth Co.
   v. Shannon Financial Corp.*, 637 F.Supp. 991, 995 (N.D. Cal.
12 1986) (Weigel, J.).

13 *Falk*, 496 F. Supp. 2d. at 1099.  Thus, the court held in *Falk* that allegations that a manufacturer

14 of a mass product knew of complaints over a period of years and failed to disclose the extent of

15 its knowledge to consumers sufficed to allege a fraud by omission claim with sufficient

16 particularity.  *Id.* at 1099.  "Accordingly Plaintiffs' fraud by omission claim will not be dismissed

17 purely for failure to precisely state the time and place of the fraudulent conduct."  *Id.*

18      Second, "[w]here fraud allegedly occurred over a period of time . . . Rule 9(b)'s

19 requirement that the circumstances of fraud be stated with particularity are [sic] less stringently

20 applied."  (*Hempfling*, 431 F. Supp. 2d at 1078 (denying motion to dismiss amended complaint

21 for failure to comply with Rule 9(b) when complaint "allege[d] generally that the fraudulent

22 conduct occurred between 2003 and 2005").  *See also Rhoades v. Powell*, 644 F. Supp. 645, 666

23 (E.D. Cal. 1986) (noting that when "the time-frame of the alleged wrongdoing is clear from the

24 complaint," Rule 9(b) requires "less specificity" in pleading).)

25      Here, Plaintiff's pleading of fraud by omission alleges that fraudulent conduct occurred

26 over a period of time.  (*See, generally*, ¶¶ 12-15), and seeks certification of a class whose time

27 period begins in the year 2000.  (Complaint, ¶ 20.)  Under the circumstances, Plaintiff has

28

1   satisfied the Fed. R. Civ. P. 9(b) particularity requirement as it applies to claims based primarily

2   on omissions.

3          While Plaintiff alleges certain affirmative statements, including the statement that pipes

4   "doesn't . . . corrode," those are pleaded to show that Ipex had a duty to disclose material

5   information to consumers.  The gist of the Complaint is the omission.  (*See* Complaint, ¶ 13)

6   ("Defendants concealed from and/or failed to disclose to Plaintiff and the class the defective

7   nature of the Product.").  Paragraph 15 makes clear that the heart of this action is Ipex's failure to

8   disclose defects with its piping system:

9              Defendants continued to advertise and sell the Product for use in buildings and
               homes, omitting to disclose to Plaintiff and the Class, and their agents, material
10             facts concerning the Product, including but not limited to that the Product was
               defectively designed and formulated, was susceptible to corrosion, would
11             otherwise not perform as represented, was not a "maintenance free system" and
               would fail before its warranted life.  As Defendants stated in their advertising,
12             "consumers have high expectations," and if Defendants had disclosed the true
               facts about the Product, those facts would have been material to the consumer.
13             The Product did not perform in accordance with the reasonable expectations of
               Plaintiff and the Class that it was durable and suitable for use as a plumbing
14             system in their homes and other structures.

15  (Complaint ¶ 15.)

16         Thus, Plaintiff has alleged his consumer protection omission claims with sufficient

17  particularity to satisfy Rules of Civil Procedure 12(b)(6) and 9(b).

18  **VI.    PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR INJUNCTIVE
            RELIEF.**
19
           Ipex concedes that "the UCL authorizes injunctive relief . . . to prevent future unfair,
20
    unlawful, or fraudulent business acts or practices."  (Motion to Dismiss, p. 15.)  That is what
21
    Plaintiff alleges:
22
               27.  Injunctive Relief (Rule 23(b)(2)  The Defendants engaged and continue to
23             engage in business practices which are unfair, unlawful and/or fraudulent in
               violation of California's Unfair Competition Law (Business & Professions Code
24             sections 17200 et seq.) and the False Advertising Law (Business & Professions
               Code sections 17500 et seq.) by, among other things, advertising and representing
25             the Product has characteristics and benefits, such as a maintenance free system or
               longevity, that are not accurate.
26
               28.  Plaintiffs seek class-wide injunctive relief, pursuant to Rule 23(b)(2), in that
27             Defendants have acted, by continuing to advertise the Product, and omitting to
               disclose material facts regarding the Product on grounds consistent with the
28             standards articulated in Rule 23(B)(2) that make final injunctive relief an
               appropriate class-wide remedy.

1

2     33.  To this day, Defendants continue to engage in unlawful practices in violation
      of California Consumers Legal Remedies Act.  Defendants continue to conceal
      the defective nature of the Product, and have omitted to disclose upon inquiry
3     from Class members the Product's defective propensities.

4    (Complaint ¶¶ 27, 28, 33.)

5        In *Consumers Union of U.S., Inc. v. Alta-Dena Cert. Dairy*, 4 Cal. App. 4th 963 (1992),

6    the court explained: "[T]he court's authority to 'prevent the use or employment' of unfair

7    business practices and false advertising necessarily includes the authority to make orders to

8    prevent such activities from occurring in the future. . . . The warning statement mandated by the

9    trial court is necessary to deter Alta-Dena from conducting similar misleading advertising

10   campaigns in the future."  4 Cal. App. 4th at 973 (citations omitted).

11       The Ninth Circuit recently underscored the importance of injunctive relief in the class

12   action setting in *Dukes v. Wal-Mart*, 509 F.3d 1168 (9th Cir. 2007).  In that closely-watched

13   gender discrimination case, the Court held that the presence of monetary claims – even monetary

14   claims which might total billions of dollars – did not preclude an injunctive relief class, and it

15   upheld the trial court's class certification order. 509 F.3d at 1186-87.

16       Here, the Complaint alleges that Ipex has engaged in unfair competition and that absent

17   injunctive relief it will continue to do so.  Ipex's argument to the contrary is disconnected both

18   with the allegations of the Complaint and with the applicable case law.  As the court explained in

19   *Consumers Union*, "sections 17203 and 17535 both give the courts the authority to 'make such

20   orders or judgments . . . as may be necessary to prevent the use or employment' of deceptive

21   advertising or unfair competition.   As we have noted above, the power to prevent the use or

22   employment of false advertising and unfair business practices necessarily includes the power to

23   correct false impressions built up by prior advertising, and the power to deter future violations."

24   (*Id*. at 975.)  Plaintiffs have every right under the Unfair Competition Law and the Consumers

25   Legal Remedies Act to call on this Court's injunctive relief powers.

26       Ipex's argument that Plaintiff's request for an injunction against misleading advertising is

27   moot because Ipex has "discontinued this product line" should be rejected.  Ipex has not

28   disclosed the material problems with Kitec pipes to consumers who previously purchased it and

1   its misleading marketing materials have neither been corrected nor withdrawn from the

2   marketplace. This Court could order Ipex, as injunctive relief, to advise its customers that it had

3   failed to disclose material information about its products. Such injunctive relief was approved by

4   the California Court of Appeals in *People ex rel. Bill Lockyer v. Fremont Life Ins. Co.*, 104

5   Cal.App.4th 508 (2002). In Fremont, the trial court ordered a life insurance company to send a

6   letter to its policyholders advising them of the adverse trial court rulings, the deceptive nature of

7   its products and how they were sold, and the remedies available to them. (*Id.* at 533-34.) The

8   appellate court affirmed. (*Id.* at 534-35.) Such injunctive relief may be appropriate here in order

9   to fully advise consumers about Ipex's misleading advertising; Plaintiff's request for injunctive

10  relief should not stricken.

11      Ipex argues that Plaintiff's request for an order requiring it to repair and/or replace the

12  defective Product "does not address the harm alleged in the complaint. . . ." (Motion to Dismiss,

13  p. 15) Ipex is mistaken. Plaintiff alleges harm beyond the effects of false or misleading

14  advertising. Indeed, Plaintiff alleges that he and "the class have suffered actual damages in that

15  the piping systems in their homes and other structures have prematurely failed and will continue

16  to do so, causing continuous and progressive damage to their property, and requiring them to

17  expend thousands of dollars to repair or replace the pipes. . . ." (Complaint, ¶ 19) This is more

18  than sufficient to allow Plaintiff to seek injunctive relief. Moreover, Courts have "broad

19  equitable powers" to remedy deceptive conduct under both the UCL and CLRA. (*See Fletcher v.*

20  *Security Pacific Nat'l Bank*, 23 Cal.3d 442, 450 (1979) ("By this language the Legislature

21  obviously intended to vest the trial court with broad authority to fashion a remedy that would

22  effectively "prevent the use . . . of any practices which violate (the) chapter (proscribing unfair

23  trade practices)" and deter the defendant, and similar entities, from engaging in such practices in

24  the future.") [UCL]; *see also Friedman v. 24 Hour Fitness*, 580 F. Supp. 2d 985, 995 (N.D. Cal.

25  2008) [CLRA] (a plaintiff seeking injunctive relief under the CLRA functions "as a private

26  attorney general, enjoining future deceptive practices on behalf of the general public.") Neither

27

28

1   case cited by Ipex precludes the ability of Plaintiffs to seek the cost to repair or replace the

2   Product as injunctive relief.[4]

3          Ipex's brief argument (Motion at 15) that the vagueness of the requested injunction causes

4   it to implicate protected commercial speech misses the mark.  The only case it cites for this

5   proposition[5] involved political speech, not commercial speech.  There is a world of difference

6   between protected political speech about nuclear power and false and misleading commercial

7   speech about the longevity of pipes.  The former is protected, the latter is not.  *See, e.g., Kasky v.*

8   *Nike, Inc.*, 27 Cal. 4th 939, 953 (2002) ["'[u]ntruthful speech, commercial or otherwise, has

9   never been protected for its own sake," quoting *Virginia Pharmacy Board v. Virginia Consumer*

10  *Counsel*, 425 U.S. 748, 771 (1976).  As the California Supreme Court explained in *Kasky*, 27

11  Cal. 4th at 946, "when a business enterprise, to promote and defend its sales and profits, makes

12  factual representations about its own products or its own operations, it must speak truthfully . . .

13  we do not consider this a remarkable or intolerable burden to impose on the business

14  community."  There is nothing vague or improper about the injunction sought in the Complaint.

15         Ipex's attack on the injunctive relief claim should be rejected for one final reason.  As a

16  district court recently held, "This Court agrees with plaintiffs that public policy purposes

17  dissuade striking injunctive relief at this early stage.  Disqualifying plaintiffs to seek injunctive

18  relief would unfairly advantage defendants and rob potential class members of a remedy."

19  *Johnson v. GMRI, Inc.*, 2007 U.S. Dist. LEXIS 66058 at *12-13 (E.D. Cal. 2007).  While

20  *Johnson* arose in the employment setting, the request for injunctive relief there was, at it is here,

21  under the Consumers Legal Remedies Act and Unfair Competition Law.

22

23          [4] *State Farm Fire & Casualty Co. v. Super. Ct.,* 45 Cal. App. 4th 1093 (1996), in addition
24  to not providing any useful analysis, was abrogated ten years ago.  *See Cel-Tech Comm'ns, Inc.
    v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999).  The only other case cited by Ipex,
25  *Cruz v. United States*, 219 F. Supp. 2d 1027, 1043 (N.D. Cal. 2002), is factually distinguishable.
    In that case, the court simply held that an injunction was not proper because, "[t]he complaint
26  does not allege, nor could it, that there is any danger that Wells Fargo might repeat past allegedly
    illegal acts."  *Id.  Cruz* does not foreclose the possibility that a manufacturer may be required
27  under the UCL or CLRA to repair or replace products it manufactured and sold to consumers
    without disclosing material facts.

28          [5] *Westside Sane/Freeze v. Ernest W. Hahn, Inc.*, 224 Cal. App. 3d 546, 558 (1990).

1    In short, the Court should reject Ipex's attempt to obtain "unfair advantage" and to "rob

2    potential class members of a remedy."

3    **VII.    PLAINTIFF HAS PROPERLY ALLEGED ENTITLEMENT TO RESTITUTION FROM IPEX UNDER THE UCL.**

4

5    In *Trew v. Volvo Cars of N. Am.*, 2006 U.S. Dist. LEXIS 4890 (E.D. Cal. Feb. 7, 2006),

6    the court denied a motion to strike claims for disgorgement of profits as a remedy for Volvo's

7    violations of the UCL.  Volvo claimed that the plaintiffs failed to allege that any member of the

8    class paid money directly to Volvo to clean or replace an electronic throttle module ("ETM").

9    (*Id*. at *7.)  Rather, the plaintiffs paid dealerships or independent mechanics to service their

10   ETMs.  (*Id*.)  Because the plaintiffs had not paid Volvo directly, Volvo argued that it had not

11   retained any property in which the plaintiffs had an interest.  Therefore, Volvo concluded that the

12   plaintiffs sought non-restitutionary disgorgement.  (*Id*.)

13   Plaintiffs responded that Volvo profited from those plaintiffs who cleaned or replaced

14   their ETMs because Volvo was the maker of the ETM and, therefore, profited from their sale.

15   (*Id*. at *7-8.)  The court held that the plaintiffs had stated a claim for restitution, relying on

16   *Corbett v. Superior Court*, 101 Cal. App. 4th 649 (2002).  (*Id*. at *9.)

17   In *Corbett*, the plaintiffs alleged that Bank of America and Hayward Dodge violated the

18   UCL by fraudulently increasing the interest rate on car loans.  (101 Cal. App. 4th at 656.)  The

19   plaintiffs claimed that Bank of America approved car loans for the plaintiffs at 12.5% interest,

20   but Hayward Dodge prepared the loan documents with a 17.5% interest rate.  (*Id*.)  Although the

21   plaintiffs paid Bank of America directly for the loan, the defendants split the money from the

22   elevated interest rate.  The court allowed the plaintiffs to recover against Hayward Dodge.

23   The court in *Trew* held that *Corbett* similarly applied to the plaintiffs who paid money to

24   Volvo dealerships:

25       Plaintiffs' analogy between this case and *Corbett* is persuasive, at least on the facts as
         plaintiffs allege them.  In *Corbett*, the court allowed the plaintiffs to recover against
26       Hayward Dodge because it received some of the profits form the allegedly fraudulent
         activity.  Similarly, plaintiffs allege that Volvo profited from its sale of replacement
27       ETMs to the mechanics and dealers that ultimately replaced parts for plaintiffs.  (FAC P
         73.)  Taking plaintiffs' allegations as true, if Volvo profited from class members who
28       replace defective ETMs by purchasing new ones, then plaintiffs could recover that money
         from Volvo under a theory of restitution.  Therefore, the court DENIES Volvo's motion
         to strike plaintiffs' claim for disgorgement of profits under the UCL.

1   (*Trew*, 2006 U.S. Dist. LEXIS at *9.)

2        Ipex relies on cases such as *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134

3   (2003), where the plaintiffs paid nothing to the defendants, indirectly or otherwise.  Such cases

4   are not on point.  In *Shersher v. Super. Ct.*, 154 Cal. App. 4th 1491, 1495-6 (2007), the California

5   Court of Appeal distinguished Korea Supply from cases similar to this one.  In *Shersher*, the trial

6   court had stricken the plaintiffs' restitution claim under the UCL because the plaintiffs had

7   purchased the wireless devices at issue through retail outlets rather than directly from Microsoft.

8   (*Id.*)  The court of appeal reversed, holding:

9            Nothing in the language of *Korea Supply* suggests that the Supreme Court
             intended to preclude consumers from seeking the return of money they paid for a
10           product that turned out to be not as represented. Rather, the holding of *Korea
             Supply* on the issue of restitution is that the remedy the plaintiff seeks must be
11           truly 'restitutionary in nature'-that is, it must represent the return of money or
             property the defendant acquired through its unfair practices.
12

13  (*Id.* at 1498.)

14       Similarly here, Ipex received money from the sale of its Kitec pipe fittings and Plaintiff

15  and the class properly seek its return through the UCL's restitutionary remedy.  (Complaint, ¶

16  41.)

17  **VIII.    THE MOTION TO STRIKE SHOULD BE DENIED.**

18       Ipex's Motion to Strike deserves short shrift.  As set forth above, none of the allegations

19  in plaintiff's Complaint is "redundant, immaterial, impertinent, or scandalous," and all of the

20  remedies sought are available in this action.  Moreover, it is well-settled that "motions to strike

21  are regarded with disfavor because often used as delaying tactics, and because of the policy

22  favoring resolution on the merits."  Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure

23  Before Trial* (2008) section 9:375 at 9-112, citing *Stanbury Law Firm v. I. R. S.*, 221 F. 3d 1059,

24  1063 (8th Cir. 2000) [striking a party's pleadings is an "extreme measure" and as a result motions

25  to strike are "viewed with disfavor and are infrequently granted"]; *RDF Media Ltd. v. Fox

26  Broadcasting* Co., 372 F. Supp. 2d 556, 566 (C.D. Cal. 2005) [Rule 12(f) motions are "generally

27  disfavored"].

28

1  **IX.    CONCLUSION.**

2       The Court should deny the motion to dismiss the First Amended Complaint and the

3  motion to strike the First Amended Complaint.

4  DATED:  January 26, 2009                    LEVY RAM & OLSON LLP

5

6                                    By:  _____*/s/ Michael F. Ram*_____
                                         Michael F. Ram (SBN 104805)
7                                        mfr@lrolaw.com
                                         LEVY, RAM & OLSON LLP
8                                        639 Front Street, 4th Floor
                                         San Francisco, CA  94111
9                                        Tel:  415-433-4949
                                         Fax:  415-433-7311
10

11                                       Charles E. Merrill (SBN 87861)
                                         Jeffrey B. Cereghino (SBN 099480)
12                                       Matt J. Malone (SBN 221545)
                                         MERRILL, NOMURA & MOLINEUX LLP
13                                       350 Rose Street
                                         Danville, CA  94526
14                                       Telephone:  925-833-1000
                                         Facsimile:  925-833-1001
15
                                         David M. Birka-White (SBN 085721)
16                                       Stephen Oroza (SBN 08461)
                                         THE BIRKA-WHITE LAW OFFICES
17                                       744 Montgomery Street, Fourth Floor
                                         San Francisco, CA  94111
18                                       Telephone:  415-616-9999
                                         Facsimile:  415-616-9494
19
                                         Dan Rottinghaus
20                                       BERDING & WEIL
                                         3240 Stone Valley Road West
21                                       Alamo, CA  94507
                                         Telephone:  925-838-2090
22                                       Facsimile:  925-820-5592

23                                       Marc H. Edelson
                                         EDELSON & ASSOCIATES, LLC
24                                       45 W. Court Street
                                         Doylestown, PA  18901
25                                       Telephone:  215-230-8043
                                         Facsimile:  215-230-8735
26
                                         Attorneys for Plaintiff and the Proposed Class
27

28
F:\Docs\1132-01\Pleadings\Opp MotDismiss 1st Amend Comp-1-26 FINAL.doc